## **AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

Your affiant, David Wilson, being duly sworn, declares and states the following:

## **INTRODUCTION**

1.  Your affiant has been employed by the Drug Enforcement Administration (DEA) for over 22 years and is currently assigned to the DEA Pensacola Resident Office. Previous assignments include the Federal Law Enforcement Training Center (FLETC) in Brunswick, Georgia; the DEA Nassau Country Office in Nassau, Bahamas; the DEA Tallahassee Resident Office; the DEA Cochabamba, Bolivia Country Office; and the DEA Jacksonville, Florida District Office. As a Special Agent with DEA, your affiant has conducted investigations from local to regional to international level drug traffickers. During such investigations, your affiant has been the affiant on numerous federal search warrants on residences, storage facilities, vehicles and telephones. Furthermore, your affiant has been the affiant on multiple federal Title-III wiretap investigations in both the Middle District of Florida and the Northern District of Florida. Your affiant has extensive training and experience in the methods and techniques drug traffickers employ to facilitate the manufacturing, transportation, and distribution of illegal narcotics.

2. The facts and information contained in this affidavit are based on my personal knowledge and observations, as well as upon information received in my official capacity from other individuals, including other federal, state and local law enforcement officers. This affidavit does not include all the information known to your Affiant as part of this investigation, but only information sufficient to establish probable cause for the arrest of Kevin WILSON (WILSON), for violations of Title 21, United States Code, Sections 841(a), 841(b)(1)(A)(viii).

## FACTS OF THE INVESTIGATION

3. In May 2019, an individual was indicted in the Northern District of Florida for conspiracy to possess with intent to distribute methamphetamine, commonly known as "ice," and distribution of "ice." This individual has since pled guilty to the aforementioned charges and is pending sentencing in the district court. The individual is cooperating with the Government as a Confidential Source (CS) in hopes of receiving a sentence reduction at the time of sentencing. On July 14, 2019, the CS advised your affiant that Kevin WILSON contacted the CS via telephone number (850) 572-8452 and inquired if the CS wanted to purchase any "ice." The CS advised your affiant that the CS had previously purchased two to three ounce quantities of "ice" from WILSON on two separate occasions. The CS told WILSON that the CS would be interested in purchasing four ounces of "ice" the following day.

7. On July 15, 2019, in preparation of making a controlled purchase for the four ounces of "ice" from WILSON, the CS met with your affiant and other law enforcement officers (LEOs) at a location in Pensacola, Florida. The CS contacted WILSON via text message inquiring if WILSON was available to conduct the transaction. WILSON replied and advised the CS that WILSON was out of town and would send an associate to deliver the four ounces of "ice" to the CS. Moments later, WILSON called the CS and advised the CS that WILSON's associate would meet the CS near Pine Forest Road and Interstate 10 in Pensacola, Florida, to conduct the transaction. The CS told WILSON to have the associate meet the CS in the Cracker Barrel parking lot to conduct the transaction.

8. LEO's searched the CS and the CS's vehicle and found no drugs or weapons during either of the searches. Your affiant provided the CS with official funds in the amount of $1500 to purchase the "ice" from WILSON. The CS was equipped with an audio monitoring/recording device to capture the conversation during the transaction. The CS departed the meet location and drove directly to the Cracker Barrel parking lot in Pensacola, Florida, while being observed by LEO's. Several minutes later, WILSON contacted the CS and advised that WILSON's associate would be arriving in a white Toyota mini-van within a few minutes.

9. Moments later, a white Toyota mini-van bearing Alabama license plate number TSD-991 arrived in the parking lot of the Cracker Barrel restaurant and the

CS motioned for the driver to park near the CS. The white mini-van parked adjacent to the CS's vehicle, and the CS conversed with the driver of the mini-van through the front passenger window. The CS asked the driver if the driver was Kevin's guy, to which the driver replied "yes." The driver introduced himself to the CS as "Mark" during the conversation. The driver told the CS the "ice" was in the glove compartment of the mini-van, and the CS retrieved a yellow bag containing two smaller baggies containing the "ice" from the glove compartment. The CS told the driver the bag did not appear to have the full four ounces of "ice." The driver then placed a telephone call to WILSON and activated the speaker on the telephone so the CS could converse with WILSON. The CS asked WILSON if the bag contained four ounces, to which WILSON replied one baggie contained three ounces and the other baggie contained one ounce. The CS then gave the driver the $1500.

10. Moments later, the CS departed the Cracker Barrel parking lot followed by LEOs, and the mini-van departed a few minutes later. The CS met with your affiant and turned over the yellow bag containing the two smaller baggies with the "ice." Your affiant determined the weight of "ice" to be 127 grams, and your affiant conducted a field test of the substance which gave a positive indication for methamphetamine.

11. Your affiant learned that the mini-van was registered to Mark HIMMELBERGER at 5741 Hitching Post Court, Montgomery, Alabama. Your

affiant obtained a driver's license photograph of HIMMELBERGER and showed the photograph to the CS. The CS advised your affiant the photograph was of the same individual the CS had obtained the four ounces of "ice" from in the Cracker Barrel parking lot.

12. In August 2019, the CS advised your affiant that WILSON contacted the CS from a new cellular telephone number, (850) 485-2389. The CS inquired if WILSON would be able to supply the CS with four ounces of "ice" the following day, to which WILSON replied in the affirmative. The following day, the CS contacted WILSON to see if WILSON was ready to conduct the transaction. WILSON advised the CS that WILSON was out of town, and that WILSON was going to send a different associate to deliver the four ounces of "ice." Moments later, the CS received a telephone call from an unknown individual advising that the individual was en route to meet the CS to deliver the four ounces of "ice" on WILSON's behalf. The CS told the individual that the CS was not comfortable meeting someone new and was not willing to meet the person. No transaction occurred, and WILSON advised the CS not to contact WILSON any more if the CS was not willing to conduct the transactions as WILSON directed. There has been no further contact between WILSON and the CS. A few days later, your affiant determined that WILSON discontinued use of telephone number (850) 485-2389.

13. Based upon the aforementioned facts and my training and experience, your Affiant submits that there is probable cause to support that WILSON did conspire to distribute and possess with intent to distribute over 50 grams of methamphetamine, its salts, isomers, and salts of its isomers, in violation of Title 21, United States Code, Sections 846, 841(a), 841(b)(1)(A)(viii) and Title 18, United States Code, Section 2.

14. Your Affiant declares under penalty of perjury that the foregoing is true and correct.

_____
David L. Wilson, Special Agent
United States Drug Enforcement Administration

Sworn to and subscribed before me this 29th day of October, 2019.

_____
Honorable Hope T. Cannon
United States Magistrate Judge